UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

BRET THIELEN, individually and on behalf
of a class of similarly situated individuals,

       Plaintiff,                                        CASE NO. 1:06 CV0016

v.                                            Honorable Gordon J. Quist

BUONGIORNO USA, INC., a Florida Corporation,      **ORAL ARGUMENT**
d/b/a BLINKO,                                     **REQUESTED**

       Defendant.

_____/

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT**

BROAD and CASSEL

One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

# TABLE OF CONTENTS

**I. FACTS AND BACKGROUND**.................................................................................1

**II. MEMORANDUM OF LAW**................................................................................5

    A.      Standard for Evaluating Motions to Dismiss...........................................5

    B.      The TCPA Does Not Apply to Blinko's Business Operation..................6

          1.      Provisions of the TCPA and the Reasons for its Enactment .......................6

          2.      Blinko Did Not Violate the TCPA Because it Does Not Use ATDS ...........10

          3.      Blinko Obtains Prior Consent or Enters into a
Business Relationship Before Sending Text Messages to Its Subscribers ....11

          4.      Blinko Is Not a Telemarketer and Does Not
Transmit Unsolicited Advertisements ...........................................11

          5.      Plaintiff's Amended Complaint Should be Dismissed
Because the TCPA Does Not Apply to Text Messages................................14

          6.      If Applied as Plaintiff Alleges, the TCPA is Unconstitutional....................16

               a.      Blinko's Text Messages Are Not Commercial Speech....................17

               b.      Assuming Arguendo Blinko's Text Messages are
Commercial Speech, as Applied, the TCPA
Violates the First Amendment ...........................................18

                    i.      There is No Substantial Interest in Preventing
the Transmission of Content-laden Text Messages..............18

                    ii.      The TCPA is Not Narrowly Tailored ...................................19

    C.      Count II Should be Dismissed Because Blinko Did Not Violate
the TCPA's Do-Not-Call Regulations ......................................20

          1.      Enactment of the Do-Not-Call Regulations.................................20

          2.      Plaintiff Lacks Standing for His Claim that Blinko
Violated the Time Restrictions of the TCPA..................................22

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

3.    Plaintiff Lacks Standing for His Claim that Blinko
Does Not Honor Subscriber Requests Not to be Called ...............................23

4.    Blinko Did Not Violate the TCPA's Do-Not-Call
Restrictions Because It Does Not Send "Telephone Solicitations"...............23

5.    The TCPA's Identification Requirement Does Not Apply to Blinko............24

6.    The Established Business Relationship Exception Bars
Plaintiff's Claim ......................................................................................24

**III.    CONCLUSION** ..........................................................................................25

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS
<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

In support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint, Defendant BUONGIORNO USA, INC. d/b/a BLINKO ("Blinko"), states as follows:

Plaintiff has pled himself out of court and the Amended Complaint should be dismissed as a matter of law.  According to Plaintiff's allegations and the reasonable inferences drawn therefrom, Blinko did not violate the Telephone Consumer Protection Act, 47 U.S.C.S. § 227 ("TCPA"), because: (1) Blinko does not use automated telephone dialing systems ("ATDS") to transmit text messages to its subscribers as required by the TCPA; (2) Blinko does not transmit text messages without obtaining prior consent from its subscribers;  (3) Blinko does not send "Unsolicited Advertisements" to its subscribers; (4) the TCPA does not apply to text messages; and (5) if applied as Plaintiff argues, the TCPA would be an unconstitutional restriction on free speech.

Count II should likewise be dismissed because Blinko did not violate the TCPA's do-not-call restrictions. Plaintiff lacks standing to assert several of the claims alleged in Count II. Blinko does not make telephone solicitations and it does not transmit text messages without prior consent, thus, the TCPA's do-not-call restrictions do not apply to it. Moreover, aspects of the TCPA's implementing regulations upon which Plaintiff bases his claims do not apply to text messaging or Blinko.

## I.      FACTS AND BACKGROUND

### <u>Procedural Background</u>

Plaintiff's initial Complaint consisted of seven pages and  34 numbered paragraphs. Plaintiff asserted one count alleging Blinko violated the TCPA based upon his receipt of five or

six allegedly unwanted text messages.  The initial Complaint was almost entirely bereft of details about Blinko and its business methods.  After obtaining leave of court to amend his Complaint, Plaintiff filed his two-count, 29 page Amended Complaint.  The Amended Complaint's 107-numbered paragraphs now include substantial allegations about Blinko's business methods and practices and form the basis for this Motion.

### Claims for Relief in the Amended Complaint

In Count I, Plaintiff alleges that Blinko violated the TCPA by sending "commercial text calls . . . using an automatic telephone dialing system and/or using an artificial and prerecorded message to the wireless telephone numbers of the Class."  Amended Complaint ¶ 93.  Plaintiff alleges these "calls" were made without the recipient's permission.  *Id.* ¶ 94.  In Count II, Plaintiff alleges that Blinko violated the TCPA's do-not-call regulations by: (1) "initiating multiple telephone solicitations before the hour of 8:00 A.M. or after 9:00 P.M."; (2) initiating telephone solicitations to persons registered on the national do-not-call database; (3) initiating telemarketing calls without maintaining or honoring an internal do-not-call list; and (4) failing to provide identifying information when placing calls.  *Id.* ¶¶ 103-05.

Plaintiff seeks to represent a nationwide class of allegedly thousands of persons, including "all persons . . . who own a cellular telephone number to which Blinko made text message calls . . . [without] prior express consent."  *Id.* ¶¶ 87-88. For reasons that will be made clear if Plaintiffs seeks to certify the proposed class, this action cannot proceed as a class action.

### Blinko's Business Methods

Blinko sends text messages known as "Short Message Services" or "SMS" to wireless (cell phone) subscribers.  *Id.* ¶¶10-12. Blinko's text messages include "entertainment content . . . such as ringtones, wallpapers, games, graphics, horoscopes, data, news, and information

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

transmitted or received via chat services. . . ." *Id.* ¶10.  Subscribers agree to reimburse their cell phone carriers for monthly subscription fees as well as any standard messaging fee charged by the cell phone carrier.  *Id.* ¶12.

Paragraph 19 of the Amended Complaint describes Blinko's subscription process:

> [A] user must initiate the activation process by (a) sending a Blinko's text message to a "short code" . . . licensed by Blinko . . . or by (b) entering a phone number in the website of one of its many affiliate advertisers.

After the subscriber supplies the cell phone number, Blinko's computer system automatically transmits a text message to the subscriber's phone number containing a personal identification number ("PIN").  *Id.* ¶ 20.  The subscriber then must activate the PIN by "(a) entering the PIN on the affiliate advertiser's website or (b) by replying to the message received with a text message confirming activation."  *Id.*  Thereafter, in addition to text messages containing entertainment content, Blinko typically transmits a welcome text message with instructions on the unsubscription process and customer care number, as well as monthly text messages concerning billing. *Id.* ¶22.

Blinko does not require subscribers to provide any information apart from their cell phone number and because Blinko does not directly bill the subscriber, it does not generally know the names or addresses of its subscribers. *Id.* ¶25-28.  Plaintiff alleges that a person could enter another person's cell phone number on an internet site advertising Blinko's services.  *Id.* ¶31.  However, the subscription would not be activated until the PIN was activated and only the

3

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

person with access to the cell phone could activate the subscription. *Id.*¶¶20, 31.[1]  Plaintiff also

theorizes that a person could possibly circumvent PIN activation by emailing Blinko. *Id.* ¶33.

### **Plaintiff's Interaction with Blinko**

Plaintiff received his first text message from Blinko on December 9, 2005 at 3:22 P.M.

Amended Complaint ¶67. Plaintiff does not allege what was contained in the first text message.

Thereafter, Plaintiff received four additional text messages from Blinko all between 3:10 P.M.

and 7:20 P.M. *Id.* ¶69.  Plaintiff alleges that the fourth text message stated:

> Here is another chance to receive your text alerts from Blinko.com.
> Simply reply with txt MY PRANK.

*Id.* ¶71. On December 14, 2005, Plaintiff sent a text message to Blinko with the word:  "stop."

*Id.* ¶72. Within seconds, Plaintiff received a text message confirming that he had been

unsubscribed. *Id.* ¶73. Plaintiff does not allege that he was ever charged by his cell phone carrier

a monthly subscription fee for the MY PRANK content he received, but alleges that he was

charged $.10 for each text message he received from Blinko (for a total of $.60). *Id.* ¶69.

Plaintiff claims he never heard of Blinko prior to receiving the text messages and denies

that he provided his cell phone number to Blinko or its advertisers.[2]  *Id.* ¶¶ 74-79. Plaintiff

claims he registered his telephone number on the national do-not-call registry on May 9, 2005.

*Id.* ¶81.

---

[1]       Plaintiff purportedly quotes a dissatisfied subscriber, Libia V., who alleged that a friend had entered her cell phone number on the internet and she received unwanted text messages; however, Libia V. references www.jamsters.com, which is one of Blinko's competitors.  Amended Complaint ¶ 32.

[2]       Plaintiff is resisting Blinko's attempts to conduct a forensic inspection of his computers to determine the veracity of this statement. See Defendant's November 2, 2006 Motion to Compel Inspection of Plaintiff's Computers.

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

**Plaintiff's Irrelevant Allegations**

Plaintiff's Amended Complaint is replete with allegations that are totally irrelevant to the claims for relief he is attempting to assert and which should be stricken.  For example, Plaintiff alleges that many of Blinko's customers have complained or canceled their subscription, however, no claim for relief springs from these allegations.  Plaintiff further loses credibility by relying on a conspiracy theory by a dissatisfied subscriber who alleges that Blinko has access to T-Mobile's billing system – of course it does not have any such access.

Additionally, Plaintiff alleges that consumers who own refurbished cell phone numbers are sometimes billed by their wireless carrier for a Blinko subscription without their knowledge. Again, however, Plaintiff does not assert a claim for relief based upon this practice by the wireless carriers. Plaintiff also finds fault with Blinko's unsubscription procedures, however, he admits he was immediately unsubscribed upon his request.  Amended Complaint ¶ 73.

## II.    MEMORANDUM OF LAW

### A.    Standard for Evaluating Motions to Dismiss

It is axiomatic that "[a]n action may be dismissed if the complaint fails to state a claim upon which relief can be granted." *LaSalle, Inc. v. IBEW Local No. 665*, 336 F. Supp. 2d 727, 728-729 (W.D. Mich. 2004)(citing FED. R. CIV. P. 12(b)(6)). The movant bears the burden of proving that the claim should be dismissed. *Id.*  Of course, all factual allegations in the complaint are presumed to be true, and the court should credit reasonable inferences in favor of the non-movant.  *Id.* The court does not have to credit "unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

A claim should be dismissed "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S.

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

69, 73, 104 S. Ct. 2229, 2232 (1984).  If the allegations of the complaint themselves defeat the claim, dismissal is appropriate.  *See, e.g., Hartfield v. East Grand Rapids Publ. Schools,* 960 F. Supp. 1259, 1264 (W.D. Mich. 1997); *Massey v. Merrill Lynch & Co.*, 464 F.3d 642 (7th Cir. 2006)("[A] party may plead itself out of court by . . . including factual allegations that establish an impenetrable defense. . . .").

### B.   The TCPA Does Not Apply to Blinko's Business Operations

Count I is barred because the TCPA does not apply to Blinko's business methods. Specifically, Blinko does not use ATDS to transmit text messages to subscribers; Blinko does not transmit text messages to subscribers without their prior consent; and Blinko does not send "unsolicited advertisements." Also, the TCPA does not apply to text messages and, if construed according to Plaintiff's wishes, it would be unconstitutional.

### 1.   Provisions of the TCPA and the Reasons for Its Enactment

Congress enacted the TCPA on December 20, 1991 as an amendment to the Communications Act of 1934. 47 U.S.C.S. §227 (2006).  The Congressional findings accompanying the TCPA include:

> (1) The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.
>
> * * *
>
> (5) Unrestricted telemarketing, however, can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety.
>
> * * *
>
> (10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

6

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

47 U.S.C.S. §227.  Congress and its constituents were most concerned with the rampant use of automated dialing systems that either dialed numbers chosen at random or systems that dialed a number and included an artificial or prerecorded voice message. S. Rep. No. 102-178, *reprinted at* 1991 U.S.C.C.A.N. 1968, 1969 (Nov. 7, 1991); 137 Cong. Rec. S18317-01 (Nov. 26, 1991)(Statement of Sen. Pressler)(noting that automatic dialers can deliver messages to "thousands of sequential phone numbers" and the dialers do not release the phone line immediately after the recipient disconnects).  Congressman Markey, the House sponsor of the TCPA, stated:

> In the final analysis a person's home is his castle.  Preservation of the tranquility and privacy of that castle should compel us to avail consumers of the opportunity to place the telephone line into their home, the sanctuary from which they escape all other trials that society and Congress cause them, off limits to intrusive and annoying interruptions.  . . [T]he nightly ritual of phone calls to homes from strangers and robots has many Americans fed up.

137 Cong. Rec. H1130701, H11310 (Nov. 26 1991).

The TCPA provides that it is unlawful to use ATDS "or an artificial or prerecorded voice" to call any telephone number "assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call" unless the recipient has given "prior express consent." 47 U.S.C.S. §227(b)(1)(A)(iii).  The TCPA defines ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a **random or sequential number generator**." *Id.* § 227(a)(1)(A) (emphasis added).

Section 227(b) of the TCPA was clearly enacted to address public safety concerns associated with telemarketing. Congress' express inclusion of emergency telephone lines and hospitals in subsection (b) confirms that it was targeted to public safety concerns.  The TCPA's

7

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

legislative history is replete with concerns about telemarketers tying up phone lines and preventing the provision of emergency services. 137 Cong. Rec. S9874 (July 11, 1991) (Statement of Sen. Hollings); 137 Cong. Rec. H11307-01 (Nov. 26, 1991) (Statement of Rep. Rinaldo). At the time of the TCPA's enactment cell phone usage was not as widespread as today, and cell phones were often used only for emergency purposes. *See In the Matter of Implementation of Section 6002(B) of the Omnibus Budget Reconciliation Act of 1993 Annual Report and Analysis of Competitive Market Conditions with Respect to Commercial Mobile Services*, 10 F.C.C.R. 8844 (Table 1)(August 18, 1995), available at http://wireless.fcc.gov/auctions/data/papersAndStudies/fc95317.pdf (reflecting only 7 million cell phone subscribers in 1991).

The TCPA provides that the state courts have jurisdiction to hear TCPA civil actions. 47 U.S.C.S. §227(b)(3); *see Chair King v. Houston Cellular Corp.,* 131 F.3d 507, 509 (5th Cir. 1997). One of the principal architects of the TCPA envisioned that TCPA claims could be brought without attorneys in state small claims courts. 137 Cong. Rec. S16204-01, S16205-06 (Nov. 7, 1991) (Statement of Sen. Hollings). The TCPA creates a private right of action and specifies that damages are the greater of actual damages (arguably in this case $0.60) or $500 per violation. 47 U.S.C.S. §227(b)(3)(B).

On October 16, 1992, as directed by the TCPA, the Federal Communications Commission adopted implementing regulations. *Rules and Regulations Implementing the Telephone Consumer Protection Act*, 7 F.C.C.R. 8752, 1992 FCC LEXIS 7019 (Oct. 16, 1992); 47 C.F.R. § 64.1200 (2006). Therein FCC identified several exceptions for using ATDS to place telephone calls to prohibited recipients. The FCC stated that telephone calls using ATDS that were placed to any telephone number for which the recipient is charged for the call were

8

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

prohibited unless the caller obtained the "prior express consent" of the party.  7 F.C.C.R. 8753,
8768 ("The TCPA allows autodialed and prerecorded message calls if the called party expressly
consents to their use."), *Id.* at 8769 ("[H]ence, telemarketers will not violate our rules by calling
a number which was provided as one at which the called party wishes to be reached.").  The
House Report supports the FCC's interpretation noting that the "called party . . . requested the
contact by providing the caller with their telephone number for use in normal business
communications." H. Rep. No. 102-317 (1991); 7 F.C.C.R. 8769 n.57 (citation omitted).  When
enacting the TCPA, Congress expressly noted that "[t]he definition of a 'telephone solicitation'
is in no way intended to include calls . . . to follow up on billing a subscriber for some service,
purchase or other transaction." H. Rep. No. 102-317.

The FCC also concluded that the TCPA's "established business relationship" exception
applied to use of ATDS although that exception was not specifically delineated in Section
227(b)(1)(A)(iii). *See* 7 F.C.C.R. 8769-70.  The FCC interpreted the term "business relationship"
broadly and stated it can exist even in the absence of the exchange of consideration. *Id.* at 8771.
Thus, telemarketers could rely upon either the prior consent or established business relationship
exception to avoid liability for using ATDS to call a prohibited recipient.

As applicable to this action, the FCC defined "telephone calls" to exclude those
commercial calls that do not include an "unsolicited advertisement."  7 F.C.C.R. 8755 n.4.  The
TCPA itself defines "unsolicited advertisements" as telephone calls advertising goods or services
made without prior consent.  47 U.S.C.S. § 227(a)(5) (2006).  "Telemarketers" are any person
making a "telephone solicitation." 7 F.C.C.R. 8755 n.4. A "telephone solicitation" is a telephone
call that encourages the purchase of property or services. 47 U.S.C.S. §227(a)(4).

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

### 2.     Blinko Did Not Violate the TCPA Because It Does Not Use ATDS

One element of Plaintiff's TCPA claim in Count I is a showing that Blinko used ATDS to contact Plaintiff.  However, Plaintiff cannot prove that Blinko uses ATDS.  Common sense and logic dictate this conclusion.

The TCPA was enacted because of public outcry over not just the increased volume of telemarketing calls but also the use of new technology such as ATDS.  137 Cong. Rec. H11307 (Nov. 26, 1991)(Statement of Rep. Markey).   Congress was concerned because telemarketers who used ATDS seized residential and emergency telephone lines and potentially imperiled public safety.  S. Rep. No. 102-178, *reprinted* at 1991 U.S.C.C.A.N. at 1969; 137 Cong. Rec. S18317-01 (Nov. 26, 1991) (Statement of Sen. Pressler).  To remedy the use of ATDS by brazen telemarketers, Section 227(b)(1)(A)(iii) prohibits telemarketing "calls" to an unwilling recipient placed by an ATDS or use of an artificial or recorded voice.[3]  As to the latter, the Court may take judicial notice that text messages do not ordinarily involve a voice component.  See Section II. B. 5 *infra*.

ATDS generate **random** telephone numbers for telemarketers to call.  137 Cong. Rec. H11307 (Nov. 26, 1991) (Statement of Rep. Markey) ("automatic dialing machines place calls randomly meaning they sometimes call unlisted numbers . . . .").  Here, as Plaintiff himself admits, Blinko only sends text messages to cell phone numbers that have been provided to it by the cell phone owner.  Amended Complaint ¶20.[4]  Moreover, it would defy logic for Blinko to

---

[3]     Plaintiff alleges that Blinko sent "artificial and prerecorded message[s]." Amended Complaint ¶93. However, Section 227(b)(1)(A)(iii) uses the phrase "artificial or prerecorded voice."

[4]     Plaintiff later contradicts himself in Paragraph 93 in which he alleges use of ATDS.  Nonetheless, the mere use of a computer database to dial numbers does not equate to use of ATDS.  See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking and Memorandum Opinion and Order, 17 F.C.C.R. 17459 at n. 96 (Sept. 18, 2002)(citing trial court decision).

BROAD and CASSEL
One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

send text messages with its entertainment content to random telephone numbers, some of which would include telephones without the capacity to receive text messages.

Accordingly, Count I should be dismissed with prejudice because Blinko does not use ATDS to transmit its text messages

### 3. Blinko Obtains Prior Consent or Enters into a Business Relationship Before Sending Text Messages to Its Subscribers

The TCPA specifically exempts "calls" to those persons who give their prior consent or with whom the "caller" has an established business relationship. Both exceptions apply to Blinko's text messaging. As Plaintiff alleged, Blinko only sends a text message to those subscribers who have provided their cell phone number. Amended Complaint ¶20. As Congress and the FCC noted, consent is established by supplying a phone number at which the subscriber wishes to be contacted. 7 F.C.C.R. 8753, 8768-69.

The FCC defined an "established business relationship" as:

> [A] prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration . . . .
> 47 C.F.R. § 64.1200 (f) (4) (2006).

By supplying their cell phone numbers, subscribers invite Blinko to communicate with them at that number. The act of supplying the cell phone number also establishes the business relationship between Blinko and its subscribers.

Accordingly, Count I should be dismissed.

### 4. Blinko Is Not a Telemarketer and Does Not Transmit Unsolicited Advertisements

The TCPA's overriding purpose is to target the telemarketing industry and to prevent unwanted advertising or sales calls. 47 U.S.C.S. §227 (Congressional findings)(Evidence

11

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

compiled by Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls "to be a nuisance and an invasion of privacy."). The FCC's implementing regulations confirm that the TCPA targets telemarketers, *i.e.*, those businesses that advertise by use of the telephone. 7 F.C.C.R. 8757.

As noted *supra*, the FCC interpreted Section 227(b) as only applying to telephone calls which included an "unsolicited advertisement." Thus, Plaintiff must demonstrate that Blinko advertises in its text messages, an allegation that is not made and which is belied by the contents of the text messages Plaintiff received.

Blinko does not transmit text messages advertising its services, rather, it delivers entertainment content to its subscribers.[5]  Plaintiff concedes as much in Paragraphs 10, 22 and 70 of the Amended Complaint.  *See* Amended Complaint ¶10 ("Since it began operating Blinko has provided third-party mobile content delivery services . . .").

Blinko's text messages are similar to the "transactional or relationship messages" under the CAN-SPAM Act which are exempt from the CAN-SPAM regulations.[6]  15 U.S.C.S. §7702 (2)(B) (2006).  Such exempt messages include emails sent to "facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender"; emails that notify the recipient of a change in the relationship; emails that periodically notify the recipient of the status of the account; or emails that "deliver goods or services . . . that the recipient is entitled to receive under the terms of a transaction that the recipient has previously agreed to enter into with the sender." 15 U.S.C.S. §7702(17)(A)(i), (iii)(II), (iii)(III), (v).

---

[5]      Blinko has acknowledged that the "Reminder" message Plaintiff received, as alleged in Paragraph 71 of the Amended Complaint, was sent in error to Plaintiff and approximately 384 MYPRANK subscribers.
[6]      The CAN-SPAM Act was enacted to regulate the transmission of unsolicited commercial email messages, commonly known as "Spam." *See Rules and Regulations Implementing the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, Order,* 69 Fed. Reg. 55765 (FCC Sept. 16, 2004).

12

Were such definitions applied to Blinko's text messages, its content messages, as described in Paragraphs 10, 22(3), and 70 of the Amended Complaint, "deliver goods or services . . . that the recipient is entitled to receive. . . " would not be prohibited. *Id.* §7702(17)(A)(v). These messages would also be exempt as messages sent to "facilitate, complete or confirm a commercial transaction. . . . " *Id.* §7702(17)(A)(i). Blinko's unsubscription text messages as described in Paragraph 73 of the Amended Complaint would also be exempt because they notify the recipient of a change in status of the relationship. *Id.* §7702(17)(A)(iii)(II).  Blinko's "monthly 'advise' of charges and monthly billed messages" described in Paragraph 22(4)-(5) of the Amended Complaint would be exempt because they advise the subscriber of account balances.[7] *Id.* §7702(17)(A)(iii)(III).  Finally, Blinko's welcome message would be exempt because it "confirms" the commercial transaction with the subscriber. *Id.* § 7702(17)(A)(i).

Of the text messages Plaintiff received from Blinko, he does not allege that any were "unsolicited advertisements."  And, of the few text messages that Plaintiff purports to quote, those text messages clearly are not "unsolicited advertisements" as they do not encourage the purchase of services.

Accordingly, Blinko has not violated the TCPA and Plaintiff's Amended Complaint should be dismissed.

---

[7]     Plaintiff does not allege that he received any of these types of text messages and offers no argument that such text messages are prohibited.

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

### 5. Plaintiff's Amended Complaint Should be Dismissed Because the TCPA Does Not Apply to Text Messages

The TCPA prohibits making "telephone calls" without prior consent.  Text messages are an entirely different species from telephone calls.  In fact, the TCPA does not mention "text messaging" or "short message services."  Pursuant to the *expressio unius est exclusivo alterius* doctrine of statutory construction, (the mention of one idea excludes the other), by failing to include text messaging within the purview of the TCPA, Congress did not intend for text messages to be governed by the TCPA.[8]

The TCPA was enacted to prevent telemarketers from invading the privacy of consumers in their homes by preventing unwanted telephone calls to "residential telephone subscribers." 7 F.C.C.R. 8769. Congress decried the jangling intrusion caused by the ringing of a telephone at the dinner table.  137 Cong. Rec. S9840, S9874 (July 11, 1991) (Statement of Sen. Hollings) (noting that telemarketing calls "wake us up in the morning, they interrupt our dinner at night, they force the sick and elderly out of bed . . . ."); 137 Cong. Rec. H11312 (Nov. 26, 1991) (Statement of Rep. Cooper) ("I hope the FCC will regard robotic calls by machines such as auto dialers and computer-generated voices to be a much greater threat to the privacy of our homes than calls by live operators.  At least you can vent your anger to a real person if they have

---

[8]    Without analysis or the benefit of a developed record, the FCC asserted that the TCPA applies to text messages.  68 Fed. Reg. 44144, 44165 (July 25, 2003).  The FCC's determination is arbitrary and capricious.  *See,e.g., Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-46 (1983);  The FCC failed to examine relevant data, consult experts, hold hearings or articulate any reasonable rationale to justify the inclusion of text messages. *See, e.g., California v. FCC,* 905 F.2d 1217, 1230 (9th Cir. 1990).  Further, the FCC exceeded its statutory authority under the TCPA.  *See, e.g. SEC v. Sloan*, 436 U.S. 103, 117-19 (1978).  Assuming *arguendo* that the FCC properly broadened the TCPA's narrow expanse, the TCPA, as applied to text messages and Blinko is an unconstitutional restriction on speech.  *See Central Hudson v. Public Service Comm'n of New York*, 447 U.S. 557, 561-66 (1980).  The restriction is not directly related to advancing any substantial interest set forth by Congress.  *Id.*  Text messages do not present the same safety or privacy concerns as pre-recorded or automated voice calls addressed by Congress in enacting the TCPA.  *See* 137 Cong. Rec. H11307 (Statement of Rep. Roukema).  Thus, the FCC's pronouncement is unlawful as applied to text messages and Blinko and should be disregarded by the Court.  Administrative Procedure Act § 10(e), 5 U.S.C.S. § 706(2)(A) (2006).

14

BROAD and CASSEL

One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

interrupted your dinner.").  As Senator Hollings noted, the TCPA "bans the means used to deliver that message – the computer voice."  137 Cong. Rec. S9874 (July 11, 1991).  Congress was also greatly concerned that ATDS do not immediately disconnect and thus, they "seize" telephone lines, causing a potential public safety hazard.  *See* 137 Cong. Rec. H11313 (Statement of Rep. Roukema); S. Rep. No. 102-178, 1991 WL 211220 at nn. 4-5.  By contrast, text messages or short message services typically transmit alphanumeric messages and do not permit immediate two-way communications.[9]  Text messaging involves the "transmission of alphanumeric messages between mobile subscribers and external systems such as electronic mail, paying and voice systems."  Wireless Short Message Service, Web Pro Forum Tutorials (@ the International Engineering Consortium), *available at* http://www.iec.org/online/tutorials/wire_sms/, attached as Exhibit 1.  Unlike telephone calls made using ATDS, text messages can be received or transmitted even while a voice or data call is ongoing.  *Id.* at 2.  Moreover, as Plaintiff alleges and as is generally known, subscribers are usually charged for each text message, whereas most telephone calls are charged based upon duration.

Congress was aware of the existence of text messaging when it amended the TCPA in 2003 and 2005.  In both instances, Congress failed to expand the TCPA to include text messages and for good reason:  text messages can be ignored far more easily than telephone calls and they do not invade the residential privacy Congress sought to protect when enacting the TCPA.  *See In the Matter of Implementation of Section 6002(B) of the Omnibus Budget Reconciliation Act of 1993 Annual Report and Analysis of Competitive Market Conditions with Respect to Commercial Mobile Services, Eleventh Report*, FCC 06-142 at 89-90 (September 29, 2006)(noting that in

---

[9]     Text messaging was likely conceived in the 1980s although it is believed that "[t]he first commercial short message was send on 3 December 1992." *available at* http://en.wikipedia.org/wiki/text_message (last modified Nov. 3, 2006).  Wikipedia is an online encyclopedia that is drafted by volunteers.

2005 only a small percentage of consumers forewent use of a residential telephone line in favor of a wireless alternative), available at http://hraunfoss.fcc.gov./edocs_public/attachmatch/FCC-06-142A1.pdf.

The clear intent of the TCPA was to prevent the unwanted intrusion into the home by telephone calls made by telemarketers. Blinko's text messaging services and, text messaging in general, do not implicate the same privacy or public safety characteristics as unwanted telemarketing telephone calls.

Accordingly, Count I (and Count II) should be dismissed because the TCPA does not apply to text messages.

### 6. If Applied as Plaintiff Alleges, the TCPA is Unconstitutional

Assuming arguendo that Plaintiff can prove Blinko uses ATDS, that it does not obtain prior consent, that its text messages are "unsolicited advertisements," and a text message is deemed to be a telephone "call," the construction of the TCPA as providing for strict liability for the transmittal of text messages would eliminate the commercial text messaging industry.

The TCPA acts to limit speech and thus implicates the First Amendment. While courts have construed the TCPA's junk fax restrictions as not violating the First Amendment, the constitutionality of the TCPA in the construction advanced by Plaintiff is an issue of first impression.

Essentially, Plaintiff argues that Blinko cannot transmit any text messages even though Plaintiff acknowledges that all subscribers must transmit their cell phone numbers to Blinko and then activate a PIN. Notwithstanding Blinko's double opt-in subscription method (provision of cell phone number and PIN activation), Plaintiff wants to apply the TCPA to put Blinko out of business.

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

### a. Blinko's Text Messages Are Not Commercial Speech

As a threshold matter because Blinko transmits "entertainment content" and not advertising, the text messages transmitted by Blinko are not "commercial speech" and, thus, the TCPA must be strictly scrutinized. The Court in *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 419-24, 113 S. Ct. 1505, 1511-14 (1993) noted that it has offered several different formulations for determining what constitutes core commercial speech. Each of these definitions share a common thread: the speech must advertise or "propose a commercial transaction." 507 U.S. at 422, 113 S. Ct. at 1513. The Court noted that its decision in *Board of Trustees v. Fox,* 492 U.S. 469, 473-74, 109 S. Ct. 3028, 3031 (1989) required that the speech at issue propose a commercial transaction. *City of Cincinnati,* 507 U.S. at 423, 113 S. Ct. at 1513.

The content transmitted by Blinko is a form of creative expression that is constitutionally protected under the First Amendment. *See Entm't Software Ass'n v. Granholm*, 426 F. Supp. 2d 646, 650-51 (E.D. Mich. 2006). Therefore, any regulation thereof must be analyzed under strict scrutiny by the Court. *See, e.g.*, *Consol. Edison Co. v. Public Serv. Comm'n*, 447 U.S. 530, 540 (1980); *Parks v. City of Columbus*, 395 F.3d 643, 654 (6th Cir. 2005) (citations omitted).

To pass strict scrutiny, the TCPA, as applied to text messages and Blinko, must be the least restrictive means necessary to directly further a compelling state interest. *See Entm't Software Ass'n*, 426 F. Supp. 2d at 651-52. As discussed more thoroughly below, the government has not established a compelling interest to justify restricting content provided by Blinko to its subscribers. See Section II. B. 6(b) *infra*.

Accordingly, Plaintiff's proffered construction of the TCPA as applied to Blinko fails under a "strict scrutiny" analysis, and, as such, would clearly violate the First Amendment.

17

BROAD and CASSEL

One Biscayne Tower, 21st Floor 2 South Biscayne Blvd. Miami, Florida 33131-1811 305.373.9400

> **b.**  **Assuming Arguendo Blinko's Text Messages Are Commercial Speech, as Applied, the TCPA Violates the First Amendment**

Even if Blinko's text messages are deemed "commercial speech," Plaintiff's vision of the TCPA violates the First Amendment. In assessing the constitutionality of a statute that regulates "commercial speech," there are several elements to be considered:

(1)     the regulation must directly advance an important governmental interest;

(2)     the regulation must be "narrowly tailored not to restrict more speech than necessary;" and

(3)     there must be a reasonable fit between the objectives and the means chosen to advance those objectives.

*Central Hudson*, 447 U.S. at 566-69, 103 S. Ct. at 2352-55. The party seeking to restrict commercial speech bears the burden of "justifying it." *Edenfield v. Fane,* 507 U.S. 761, 770, 113 S. Ct. 1792, 1800 (1993).  The important governmental interest must address harms that are "real." *Id.* 507 U.S. at 770-71, 113 S. Ct. at 1800.  Moreover, in demonstrating a substantial government interest, more than "anecdote and supposition" must be shown.  *United States v. Playboy Entertainment Group,* 529 U.S. 803, 822, 120 S. Ct. 1878, 1891 (2000).  Here text messages are mentioned only once in the FCC's do-not-call implementing regulations.

> **i.**  **There Is No Substantial Interest in Preventing the Transmission of Content-laden Text Messages**

The TCPA was enacted to curb the invasion of privacy caused by telemarketing abuse and to protect public safety.  As to the latter interest, text messages do not imperil public safety because they do not "seize" telephone lines like ATDS.  As noted above, Congress was concerned about public safety, because ATDS seize telephone lines and do not immediately disconnect the line theoretically preventing the recipient from making an outgoing telephone call

18

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

or tying up emergency phone lines.  Text messages permit calls to be made or received and the disconnection problem associated with telephone calls made using ATDS is non-existent.

As to the first purported interest, text messages do not invade residential consumers' privacy to the same extent as telemarketing telephone calls.  First, text messages are typically sent to wireless numbers and not necessarily residential lines.  Second, text messages can be configured to vibrate upon receipt, which is far less intrusive than the ring of a wire line telephone.  Third, text messages are brief and the intrusion, if any, is inconsequential.  As discussed above, the FCC's terse conclusion that the TCPA applies to text messages is not supported by any quantum of evidence and is belied by the stark differences between text messages and telephone calls.

### ii.    The TCPA Is Not Narrowly Tailored

Plaintiff admits that Blinko requires subscribers to supply their cell phone number to Blinko before receiving any text messages.  As discussed above, this act supplies prior consent.  However, Plaintiff is advocating a system that would prevent Blinko from obtaining any subscribers.  In essence, Plaintiff is arguing that Blinko must invent a new way to attract subscribers, because Plaintiff theorizes that Blinko's double opt-in system can be exploited.  Left unsaid is what will happen to the thousands of Blinko's subscribers who are satisfied subscribers?

Plaintiff's vision of the TCPA violates the First Amendment as applied to Blinko and Count I should be dismissed.

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

**C.** **Count II Should be Dismissed Because Blinko Did Not Violate the TCPA's Do-Not-Call Regulations**

In Count II, Plaintiff alleges that Blinko violated the TCPA and its implementing regulations relating to do-not-call restrictions. 47 U.S.C.S. §227(c); 47 C.F.R. §64.1200. Specifically, Plaintiff alleges that Blinko violated the do-not-call restrictions by allegedly: (1) "initiating multiple telephone solicitations before the hour of 8:00 A.M. or after 9:00 P.M."; (2) initiating telephone solicitations to persons registered on the national do-not-call database; (3) initiating calls for telemarketing purposes without maintaining an internal do-not-call list; and (4) failing to provide identifying information when placing **telemarketing** calls. Amended Complaint ¶¶ 103-105.

Each of Plaintiff's claims within Count II lack merit. First, Plaintiff lacks standing for various aspects of his claims. Second, the do-not-call restrictions do not apply to Blinko, because it does not engage in telemarketing or telephone solicitations. Third, Blinko obtains prior consent and/or communicates only with customers with whom it has an established business relationship. Fourth, the TCPA's identification requirement does not apply to Blinko's text messages.

**1.** **Enactment of the TCPA's Do-Not-Call Restrictions**

Although the FCC required that companies maintain internal do-not-call lists in the original regulations implementing the TCPA, those lists proved unsuccessful.[10] *Mainstream Marketing Servs. v. FTC,* 358 F.3d 1228, 1244 (10th Cir.), *cert. denied,* 125 S. Ct. 47 (2004); 68 Fed. Reg. 44,144 (July 25, 2003) (FCC noted inefficiency of company-maintained do-not-call lists). To remedy the failure of industry-maintained do-not-call lists, Congress amended the

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

TCPA in 2003 to create a national do-not-call registry and authorized the FCC to adopt implementing regulations for the do-not-call restrictions.

Notwithstanding the new restrictions, Congress noted that consumers who change their phone number could reasonably expect to receive unwanted telemarketer solicitations for 6 to 12 months after the change. 137 Cong. Rec. H113311 (Nov. 26, 1991), 1991 WL 250340 (Statement of Rep. Rinaldo). Calls to persons listed on the do-not-call list are protected by the established business relationship exception. 68 Fed. Reg. 44,147 (July 25, 2003). The FCC defined an "established business relationship" for purposes of the do-not-call regulations as:

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within three months immediately preceding the date of the call . . . . 47 C.F.R. §64.1200 (f) (4).

In the implementing regulations, the FCC prohibited telemarketers from making telephone calls before 8:00 A.M. and after 9:00 P.M. 47 C.F.R. § 64.1200(c)(1). The FCC also required telemarketers to maintain internal do-not-call lists and honor requests from consumers who stated they no longer wished to receive calls within a "reasonable" time. 68 Fed. Reg. 44,155-56.

In *Mainstream Marketing*, the do-not-call regulations survived a constitutional challenge from telemarketers. 358 F.3d at 1235 n.6 (defining telemarketing as sales calls "made to induce purchases of goods or services. . . ."). The court held that the do-not-call rules do not violate the

---

[10]    The FCC received extensive opposition to a national do-not-call database when adopting its original regulations implementing the TCPA in 1992. *See* 7 F.C.C.R. 8758.

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

First Amendment, asserting that they only target speech "that invades the privacy of the home, a personal sanctuary that enjoys a unique status in our constitutional jurisprudence." *Id.* at 1232. The court later stated: "the ancient concept that 'a man's home is his castle' into which 'not even the king may enter' has lost none of its vitality." *Id.* at 1237 (citations omitted). Here as the text messages are transmitted to cell phones, the home is not necessarily "invaded."[11]

 2. **Plaintiff Lacks Standing for His Claim that Blinko Violated the Time Restrictions of the TCPA.**

Assuming arguendo that the do-not-call regulations apply to Blinko, Plaintiff lacks standing to assert claims that Blinko placed telemarketing telephone calls before 8:00 A.M. and after 9:00 P.M. Plaintiff never received a text message that was transmitted during prohibited hours.

It is axiomatic that a putative class action plaintiff must have standing to pursue claims on behalf of the class. *O'Shea v. Littleton*, 414 U.S. 488, 493-94, 94 S. Ct. 669, 675 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.")(citations omitted); *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002)(affirming dismissal of class action based upon putative class plaintiffs' lack of standing).

Blinko allegedly transmitted all of its text messages to Plaintiff between 3:10 P.M. and 7:20 P.M. within permissible hours. Moreover, despite quoting complaints by several apparently dissatisfied subscribers, none of those subscribers allege receiving text messages during the restricted hours. Even if they had so alleged, those allegations would not confer standing on Plaintiff.

---

[11]  Also cell phones can be programmed not to ring when a text message is received, a fact that distinguis hes

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

Accordingly, Plaintiff's claim that Blinko violated the TCPA's time restrictions should be dismissed.

### 3. Plaintiff Lacks Standing for His Claim that Blinko Does Not Honor Subscriber Requests Not to be Called

As with his claim that Blinko sent text messages during prohibited hours, Plaintiff lacks standing for his claim that Blinko did not honor a wireless subscriber's do-not-call request. Amended Complaint ¶105(2).

The TCPA's implementing regulations state that telemarketers must honor requests from subscribers to the telemarketers not to be called within a reasonable time from the date such request is made. 47 C.F.R. §64.1200(d)(3). Here, Plaintiff alleged that he unsubscribed on December 14 and he received a text message confirming his unsubscription **seconds** after his request. Amended Complaint ¶73. Although Plaintiff does not allege he requested to be placed on Blinko's internal do-not call list, assuming his unsubscription request can be deemed a do-not-call request, Blinko clearly honored the request. Accordingly, Plaintiff lacks standing to pursue this claim.

### 4. Blinko Did Not Violate the TCPA's Do-Not-Call Restrictions Because It Does Not Send "Telephone Solicitations"

The TCPA's implementing regulations prevent **telemarketers** from making telephone calls to persons registered on the national do-not-call database. 47 C.F.R. § 64.1200 (c)(2). However, the do-not-call restrictions only apply to "telephone solicitations" which are defined as telephone calls that encourage "the purchase, or rental of, or investment in, property, goods, or services." *Id.* § 64.1200 (f)(12).

---

text messages from the jarring ring accompanying a telemarketing phone call.

BROAD and CASSEL

One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.   Miami, Florida   33131-1811   305.373.9400

As discussed *supra* in Section II.B.3, Blinko is not a telemarketer and it does not make "telephone solicitations." None of its text messages are alleged to encourage the purchase of its services. Accordingly, Plaintiff's claim that Blinko violated the do-not-call regulations should be dismissed.

### 5.    The TCPA's Identification Requirement Does Not Apply to Blinko

Plaintiff also claims that Blinko violated 47 C.F.R. § 64.1200(d)(4) by failing to identify itself when sending text messages. However, the identification requirement does not and cannot apply to Blinko. Moreover, Section 64.1200(d) only applies by definition to calls made to "residential telephone subscribers" a population that is distinct from the class that Plaintiff seeks to certify.

Section 64.1200(d)(4) presumably requires telemarketers to identify themselves when making a telephone call and specifically requires the telemarketer to supply: "the name of the individual caller." Notwithstanding the fact that Blinko does not place telephone calls, its text messages cannot be required to comply with the identification requirement, because no person sends the text message. Instead they are sent via computer as Plaintiff acknowledged at Paragraph 20 of the Amended Complaint. Accordingly, Blinko cannot identify the person sending the text message.

### 6.    The Established Business Relationship Exception Bars Plaintiff's Claim

Telemarketing calls made to persons with whom the caller has an "established business relationship" are not subject to the do-not-call restrictions. Plaintiff alleged that Blinko receives cell phone numbers when subscribers provide their numbers usually through independent internet advertising. Thus, subscribers **inquire** about Blinko's services and form the requisite

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

"established business relationship."  Accordingly, Plaintiff's claim that Blinko violated the do-not-call restrictions should be dismissed.

## III.    CONCLUSION

For the reasons and authorities set forth above, Blinko respectfully requests that the Court dismiss Plaintiff's First Amended Class Action Complaint with prejudice.

Dated:  November 6, 2006.

s/ __Rhett Traband_____
Rhett Traband, P.A.
BROAD AND CASSEL
2 South Biscayne Boulevard
21st Floor
Miami, FL  33131
Tel:  (305) 373-9476
Fax:  (305)995-6391
rtraband@broadandcassel.com

Thomas Blackwell, Esq.
Local Counsel
SMITH HAUGHEY RICE ROEGGE LLC
250 Monroe Ave. N.W., Suite 200
Grand Rapids, MI  49503
Tel: (616) 458-8426
Fax: (616) 774-2461
tblackwell@shrr.com

MIA1\COMMLIT\357052.1
35187/0002

25

BROAD and CASSEL

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400